FARLEY *v.* STATE

No. 43243          January 11, 1965          .170 So. 2d 625

*William S. Turner,* Aberdeen, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

LEE, C. J.

Allen B. Farley was charged, in the justice of the peace court, with unlawfully and wilfully driving a motor vehicle, under the influence of intoxicating liquor, on U. S. Highway 45 in District 5 of Monroe County, Mississippi. He was found guilty and was sentenced to pay a fine of $300.00 and serve ten days in jail. From the judgment rendered, he appealed.

On the day before this occurrence, Farley had driven his car to the home of Son Gilleland, parking it in front of the door, and there he spent the night. The house was situated on the west side of, and a short distance from, the highway, with a driveway thereto entering from both the north and the south.

Late the next afternoon, Sunday, January 5, 1964, two highway patrolmen, Lloyd Bean and Jesse Coke, in separate cars, were driving along the highway on

the lookout for a car of the description of Farley's. They testified that, as they were passing this place they saw the car, with the defendant under the steering wheel, moving down the slightly inclined driveway from the house and stopping as the bumper was about the edge of the concrete slab. Bean stopped his car on the west side and beyond that vehicle. As he started toward it, another person got out of the car and walked back to the building. Farley was still sitting under the steering wheel, in a drunken condition. Following the arrest, the patrolman made a search for weapons and found a gun, a hunting knife, and a bottle with a small amount of whiskey in it. He tried to crank the car, but it would not start. Patrolman Coke gave corroboration, saying that, as he was passing the place he had also seen the vehicle, coming down the driveway from the house, and that Farley was in control of it. He also said that Farley was intoxicated.

In other words, the state's evidence was to the effect that Farley, sitting under the steering wheel, drove the car down the driveway from the house to the edge of the pavement, in and over a part of the highway, at a time when he was under the influence of intoxicating liquor. The patrolman, not being able to start the car on its own power, secured a wrecker. The operator of that machinery, on failing to crank the car, towed it to his storage yard. The next morning, although no repair work at all had been performed on the car, he got in it and easily cranked it. He said that a likely reason for the trouble was that it became flooded as it rolled down the incline toward the highway.

The defendant testified that he and Charles Smith tried to crank the car, but they were unsuccessful. They then pushed it beyond the door and left it headed down the little incline. He went back to the car about 5 o'clock to get some medicine, and again about 6 o'clock to get some cigarettes. While he was walking away

from the car, the patrolman came up and charged him with drunken driving. He admitted that he had taken one small drink of liquor and that the medicine would "addle" him and that it did so on that occasion.

He has assigned and argued that his conviction for driving a motor vehicle while under the influence of intoxicating liquor was erroneous because his automobile would not run or move under its own power.

■■ ■ Actually the state's evidence showed that the defendant, while under the influence of intoxicating liquor, not only drove the motor vehicle down the driveway, but that he also *drove it onto the right-of-way of the highway and to the edge of the pavement.* On this issue, the jury was warranted in finding the accused guilty.

Besides, Mississippi Code Annotated sections 8127 and 8174 (1956) must be kept in mind.

Section 8127(a), *supra,* defined "vehicle" as: "Every device, in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks." Under paragraph (b) thereof a motor vehicle is defined as: *"Every vehicle which is self-propelled* and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails." (Emphasis supplied).

Section 8174, *supra,* provides:

"(a) It is unlawful and punishable as provided in subdivision (b) of this section for any person who is an habitual user of narcotic drugs or any person who is under the influence of narcotic drugs, marijuana, barbiturates, intoxicating liquor or of any proprietary or patent medicine by whatsoever name called, which, if drunk to excess, will produce intoxication, *to drive any vehicle within this state.*

"(b) Every person who is convicted of a violation of this section shall be punished by imprisonment for not less than ten days nor more than one year, or by a fine of not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00), or by both such fine and imprisonment. On a second or subsequent conviction he shall be punished by imprisonment for not less than ninety days nor more than one year, and, in the discretion of the court, a fine of not more than one thousand dollars ($1,000.00). . . ." (Emphasis supplied).

It will be seen that, from a consideration of these statutes, no vehicle, which also included a motor vehicle, can be lawfully driven within this state in any place, be it public or private, if the driver is under the influence of intoxicating liquor, or the other drugs, etc., condemned by the statute. These prohibitions are directed toward the condition of the operator.

For instance, in the case of State v. Pike, 312 Mo. 27, 278 S. W. 725 (1925), the statute provided that "no person shall operate a motor vehicle while in an intoxicated condition, or when under the influence of drugs." The information there charged that the defendant, in that jurisdiction, operated a motor vehicle while under the influence of intoxicating liquor. The opinion held that the charge was sufficient, and affirmed the conviction. It also said that the statute "is not a road regulation, but a prohibition against an intoxicated person operating an automobile." See also Flanders v. State, 104 S.E. 2d 538 (Ga. 1958); and State v. Dowling, 204 Iowa 977, 216 N.W. 271 (1927).

██ █ The rationale of these holdings was that intoxicated persons should not be permitted to operate automobiles anywhere because of the potential danger of such instrumentalities. One, in such condition, might not remain off the highways; actually he might injure others in other places.

The two patrolmen said that Farley was steering the car as it came down the driveway onto and upon the highway. Of, course, the automobile here in question was a self-propelled motor vehicle. But the appellant contends that it would not operate on its own power. True, neither the patrolman nor the operator of the wrecker was able to crank it after it had stopped on the edge of the actual pavement. But, without repair of any kind, the operator was able to crank it the next morning, and he assigned as a likely cause for its failure to start that the carburetor had become flooded.

Other courts have held that the question is whether the vehicle is designed for self-propulsion, even though it may not be capable, at a particular time, to move under its own power. In State v. Tacey, 102 Vt. 439, 150 Atl. 68-9 (1930), 68 A.L.R. 1353-4, involving a dead motor which was guided while being towed, the opinion said that "manifestly it was the design, mechanism, and construction of the vehicle, and not a temporary condition, that the Legislature had in mind when framing the definition of a motor vehicle. Neither' the authorities nor sound logic admit of a different conclusion." Likewise, in State v. Storrs, 105 Vt. 180, 163 Atl. 560 (1933), it was held that the mere turning on of the ignition switch constituted operation of a car even though the motor was defective and could not have been started. See also Commonwealth v. Uski, 263 Mass. 22, 160 N.E. 305 (1928); Fisher, Vehicle Traffic Law 275-7 (1961).

The evidence was clearly sufficient to show that the appellant was operating the automobile, at the time of this incident, while under the influence of intoxicating liquor, perhaps combined with drugs, and that this operation was both on the driveway and on the highway. Consequently it follows that the judgment of conviction must be, and it is, affirmed.

Affirmed.

*Ethridge, Gillespie, Jones, and Brady, JJ.,* concur.